UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| VINCENT OTYANG,<br><br>        Plaintiff,<br>   v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>        Defendant.<br>_____/ | No. C 12-00577 MEJ<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Pending before the Court is Defendant City and County of San Francisco's Motion for Summary Judgment (Dkt. No. 20). Plaintiff Vincent Otyang has filed an Opposition (Dkt. No. 27), to which Defendant filed a Reply (Dkt. No. 30). On February 14, 2013, the Court held oral argument in this matter. Having carefully considered the parties' written submissions, controlling authorities, and oral argument, the Court **GRANTS** Defendant's Motion.

## II. BACKGROUND

Plaintiff filed this action in San Francisco Superior Court on February 23, 2011. Dkt. No. 1. On January 6, 2012, Plaintiff filed the operative First Amended Complaint (FAC), asserting a claim under 42 U.S.C. § 1983 for violation of his First Amendment Rights, and claims under California law for assault and battery, negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. *Id*., Ex. E. Defendant thereafter removed the action from state court on the basis of federal question jurisdiction. *Id*.

Plaintiff's claims stem from incidents occurring in August 2008 and April 2010 between Plaintiff and San Francisco Park Ranger Jose Mitra while Plaintiff was engaged in voter registration and petitioning activities in San Francisco's Civic Center Plaza. Except where indicated, the

following facts are undisputed.

**A.     The August 28, 2008 Incident**

In August 2008, Plaintiff was working for the California Democratic Party on a special voter registration drive. Deposition of Vincent Otyang at 41:21-25, Declaration of Joshua White, Ex. 1, Dkt. No. 21. Beginning in the morning on August 30, 2008, Plaintiff had set up a table in Civic Center Plaza and was collecting signatures. *Id*. at 127:3-5. At approximately 4:00 p.m. that day, someone called San Francisco police regarding Plaintiff. *Id*. at 127:6-128:8, 128:3-7, 129:9-18. According to Plaintiff, four or five San Francisco Police Officers responded to the call and one officer approached him and advised him that they had received a call about Plaintiff "selling stuff." *Id*. at 128:9-129:7. Plaintiff testified that while he was speaking with the officer, San Francisco Recreation and Parks Department Ranger Jose Mitra intervened and informed Plaintiff that he did not have a right to be there. *Id*. at 129:14-130:14. Plaintiff left at the end of the day and returned on August 31, 2008, to resume collecting signatures to register eligible voters. *Id*. at 130:15-132:10, 136:25-137:3. According to Plaintiff, just as he entered Civic Center Plaza, Ranger Mitra tackled him, handcuffed him, and then issued a citation to him. *Id*. at 137:4-9, 137:24-138:23, 139:3-12, 167:10-23.

**B.     The April 10, 2010 Incident**

On April 10, 2010, Plaintiff was working for a company called H&H Petitions Management and went to Civic Center Plaza to collect signatures for California petitions. *Id*. at 40:6-9, 69:3-11. On that date, the Center for Lao Studies was holding its Second International Lao New Year Festival in Civic Center Plaza. *Id*. at 69:12-70:1. The Center for Lao Studies had obtained a Special Event Permit for the operation of the Festival that allowed them to fence off Civic Center Plaza consistent with San Francisco Park Code section 7.15. Declaration of Dana Ketcham ¶ 2 & Ex. A, Dkt. No. 23; Otyang Depo at 70:20-22.

Specifically, section 7.15 states:

> **PARK CODE SEC. 7.15. PERMITS–RIGHTS GRANTED.** Any person possessing a valid permit, which states that an area has been reserved for such person's use, has the exclusive right to use the area or facility specified in the permit for the time specified. It shall be unlawful for any person to

2

> refuse to leave an area or facility which has been reserved by a valid permit when asked to do so by the person or party displaying such permit, by a Recreation and Park Department employee, by a police officer, or by a member of the Park Patrol, and no person shall in any manner disturb or interfere with any person or party occupying the area under such a permit, nor with the belongings of such person or party.

Plaintiff arrived at Civic Center Plaza between 10:00 and 10:30 a.m. on April 10, 2010, and went through the entrance to the Festival. Otyang Depo. at 71:12-21. After entering the Festival, Plaintiff set up a table approximately four feet by two feet in the middle of the fenced area facing the crowd in order to register voters and circulate state propositions. *Id*. at 54:16-23, 76:1-17; Decl. of Vincent Otyang ¶ 4, Dkt. No. 29. Plaintiff put up a sign and laid out approximately seven to ten clipboards with petitions to collect voters' signatures. *Id*. at 58:1-17.

Plaintiff did not obtain written permission from the Lao Center or pay money to it to set up a table inside the event. *Id*. at 78:16-19, 83:20-25. Nor did Plaintiff obtain permission from the City to set up a table at the event. *Id*. at 77:18-25, 97:18-24. However, Plaintiff testifies that when entering the event, he introduced himself to a woman he understood to be a supervisor who was greeting crowds as they entered. Otyang Decl. ¶ 3. Plaintiff told the woman that he was registering voters and circulating propositions and handed her a clipboard to view the materials. *Id*. ¶ 4. Plaintiff was carrying a fold-up table to set up inside the event and the woman did not object or ask Plaintiff to leave. *Id*. When Plaintiff asked the woman for a brochure about the event, the woman, in return, asked Plaintiff for a small donation, which he made. *Id*. Plaintiff testified that, based on this interaction, he believed he had been given permission by the event organizers to petition and set up his table inside the event. *Id*.

San Francisco Park Code section 7.03(t), provides:

No person shall, without a permit, perform any of the following acts in any park:

. . .

> (t) Station or erect any table, scaffold, stage, platform, rostrum, tower, stand, bandstand, building, fence, wall, monument, dome or other structure.

On April 10th, Ranger Mitra was patrolling the Lao Festival at Civic Center Plaza on foot.

3

Mitra Decl. ¶ 2. Ranger Mitra was aware that the organizers had obtained a valid permit from the City to fence off Civic Center Plaza to hold the Festival. *Id*. While patrolling, Ranger Mitra received a complaint from the event organizers that Plaintiff had not, like all other people who had set up tables at the event, obtained advanced permission from the event organizers to set up his table. *Id*. Ranger Mitra was also informed that Plaintiff had been asked to leave the event, but refused to do so. *Id*. Based on this information, Ranger Mitra approached Plaintiff from behind and saw that Plaintiff had set up a table within the fenced-off area of Civic Center Plaza. *Id*. ¶ 3. During his deposition, Plaintiff testified that Ranger Mitra tapped him on the shoulder to get his attention. Otyang Depo. at 91:1-12, 93:6-25. In his Declaration in support of his Opposition, Plaintiff now states that Ranger Mitra approached Plaintiff from behind and touched him "forcefully" on his shoulder to get his attention. Otyang Decl. at ¶ 4. At that point, because Plaintiff had set up a table in Civic Center Plaza without permission, Ranger Mitra asked Plaintiff to leave the event. Mitra Decl. ¶ 3. Plaintiff, however, contends that Ranger Mitra threatened that he had the power to arrest Plaintiff and "suspend what [Plaintiff] was doing because he was the law." Otyang Decl. ¶ 8. Officer Mitra then issued a citation to Plaintiff, called San Francisco police, waited for Plaintiff to pack up the table and clipboards, and escorted Plaintiff outside of the Festival. *Id*.; Otyang Depo. at 103:21-25.

### III.   DISCUSSION

**A.   Claims Arising From the 2008 Incident**

Defendant first moves for summary judgment on any of Plaintiff's claims arising from the 2008 incident on the ground that such claims asserted in this action are untimely under the two-year statute of limitations applicable to § 1983 and state law claims. Mot. at 6. Plaintiff concedes that any claims arising from the 2008 incident are time-barred. Accordingly, the Court **GRANTS** summary judgment in favor of Defendant on all claims arising from the 2008 incident.

**B.   Federal Claims**

   1.   Plaintiff's Section 1983 Claim

In his first claim, Plaintiff asserts that Ranger Mitra violated his "right to peaceably assemble and petition, including the right to circulate documents for citizens to sign, as guaranteed by the First

4

Amendment . . . ." FAC ¶ 17. Defendant moves for summary judgment on Plaintiff's § 1983 claim on the ground that no violation of Plaintiff's First Amendment right occurred and even if there was a violation, Ranger Mitra is entitled to qualified immunity because the right to petition with a table was not clearly established. Mot. at 7, Reply at 4.

"The doctrine of qualified immunity protects government officials from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity standard allows for mistakes in judgment by protecting all but the plainly incompetent or those who knowingly violate the law. *Hunter v. Bryant*, 502 U.S. 224, 229 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). To determine whether a government official is entitled to qualified immunity, the Court considers whether the facts that the plaintiff has alleged make out a violation of a constitutional right and whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *See Pearson*, 555 U.S. at 232. The Court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

The Court first examines whether a constitutional violation occurred. Plaintiff contends that the facts demonstrate that Ranger Mitra's conduct violated his First Amendment right to peaceably assemble and petition. Opp. at 5. Defendant, however, contends that Plaintiff's right to assemble and petition was not violated by Ranger Mitra's enforcement of Park Code § 7.03(t) because there is no protected right to petition with the use of a table. Reply at 3. The Court agrees with Defendant.

As the foregoing indicates, the parties dispute the nature of the right at issue in this case. Plaintiff maintains that Ranger Mitra interfered with his right to assemble and petition. However, as Defendant points out, neither the City Park Code nor Ranger Mitra infringed on Plaintiff's right to petition. Ranger Mitra's response was not precipitated by Plaintiff's act of petitioning in Civic Center Plaza, but his act of setting up a table. Under Park Code § 7.02(t), individuals are prohibited from erecting without a permit. Thus, Plaintiff was free to petition in the park area, but under §

7.02(t), if he wanted to set up a table as part of his petition drive, he had to obtain a permit from the City. The question thus becomes whether this regulation requiring a permit to set up a table offends the First Amendment.

The Ninth Circuit has recognized that, "[d]espite the broad First Amendment protection accorded expressive activity in public parks, 'certain restrictions on speech in the public parks are valid. Specifically, a municipality may issue reasonable regulations governing the time, place or manner of speech.'" *Berger v. City of Seattle*, 569 F.3d 1029, 1036 (9th Cir. 2009) (quoting *Grossman v. City of Portland*, 33 F.3d 1200, 1205 (9th Cir. 1994)); *see also Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984). To pass constitutional muster, a time, place, or manner restriction must meet three criteria: (1) it must be content-neutral; (2) it must be "narrowly tailored to serve a significant governmental interest"; and (3) it must "leave open ample alternative channels for communication of the information." *Id*. (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). Here, § 7.03(t) requires a permit to set up a table irrespective of the message that the individual seeks to convey. It is not specifically targeted at petitioning or political speech, but applies generally to prevent any individual from erecting a table in the park area regardless of the content or viewpoint of any communication. With respect to the scope of § 7.03(t), Defendant contends that there is a finite amount of public space in the park area and erecting unregulated and potentially dangerous tables and other petitioning props exposes Defendant to liability. Reply at 3. As Defendant points out, § 7.03(t) does not prohibit petitioning, or any other speech, but merely requires a permit to erect a table or other structure in a City park. Thus, the regulation directly addresses Defendant's interests in ensuring that park space is managed and that any structures erected do not pose safety concerns to citizens or expose the City to unforseen liability without impacting speech. Third, the regulation leaves open ample alternative channels for communication. While § 7.03(t) requires an individual to obtain a permit to set up a table in a San Francisco park, it does not prevent or impede an individual from conveying information. In this case, Plaintiff was free to petition and seek voter signatures in the park area without the use of a table. Thus, the restriction did not curtail the channels Plaintiff had available to carry out his petition drive. Taking the foregoing

6

1 factors into consideration, the Court finds that § 7.03(t) passes constitutional muster.  Because it is
2 undisputed that Plaintiff did not obtain a permit from Defendant prior to setting up his table, he was
3 in violation of the statute.  As a result, Ranger Mitra was authorized to require Plaintiff to dismantle
4 his table, and when he refused, to require Plaintiff to leave the Civic Center Plaza park area.  The
5 Court therefore finds that Plaintiff has failed to establish that he suffered a violation of his First
6 Amendment rights when Ranger Mitra enforced § 7.03(t).

7 Defendant further argues that, even assuming that Ranger Mitra's enforcement of § 7.03(t)
8 amounted to a violation of Plaintiff's First Amendment rights, there is no authority suggesting that
9 Ranger Mitra would have been on notice that enforcing § 7.03(t) would be unlawful.  Reply at 4.  In
10 response, Plaintiff has not cited any case law, and the Court has found none, indicating that the right
11 to set up a table without a permit in a public park is so clearly established that Ranger Mitra should
12 have known that enforcing the City ordinance requiring a permit violated such right.  *See, e.g.,*
13 *Burnett v. Bottoms*, 368 F. Supp. 2d 1033, 1044 (D. Ariz. 2005) (officers entitled to qualified
14 immunity after plaintiff failed to show that First Amendment right to "freedom of movement" was
15 clearly established).  Thus, the Court finds that even if a constitutional violation occurred, Officer
16 Mitra is entitled to qualified immunity for Plaintiff's § 1983 claim.

17       2. *Monell* Claim

18 Plaintiff also asserts his § 1983 claim against the City.  A government entity may not be held
19 liable under 42 U.S.C. § 1983 unless a policy, practice, or custom of the entity can be shown to be a
20 moving force behind a violation of constitutional rights.  *Monell v. Dep't of Soc. Servs.*, 436 U.S.
21 658, 694 (1978).  In order to establish liability for governmental entities under Monell, a plaintiff
22 must prove "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that
23 the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's
24 constitutional right; and, (4) that the policy is the moving force behind the constitutional violation."
25 *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (internal quotation
26 marks and citation omitted; alterations in original).

27 Because Plaintiff has failed to establish that a constitutional violation occurred, Plaintiff's
28

claim against the City fails.  Further, Plaintiff has failed to identify a policy, practice, or custom of the City that resulted in the alleged deprivation of his constitutional rights.  Accordingly, Defendant is entitled to summary judgment on this claim.

**C.     State Law Claims**

1.     Assault and Battery

Plaintiff's second claim is for assault and battery.  FAC at 5-6.  He alleges that Ranger Mitra threatened and unlawfully touched him without his consent.  FAC ¶ 23.

For an assault claim under California law, a plaintiff must show that: (1) the defendant threatened to touch him in a harmful or offensive manner; (2) it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the harm.  *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007) (citation omitted).  Here, Plaintiff testified that Ranger Mitra approached him *from behind* and tapped him on the shoulder.  Thus, the undisputed facts fail to establish that Ranger Mitra threatened to touch Plaintiff or that it reasonably appeared to Plaintiff that Ranger Mitra was about to make contact with him such that Plaintiff experienced apprehension of imminent contact.  The Court therefore **GRANTS** summary judgment in favor of Defendant on Plaintiff's assault claim.

For battery, a plaintiff must show that: (1) the defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person; (2) the plaintiff did not consent to the contact; and (3) the contact caused injury, damage, loss, or harm to the plaintiff.  *Id*. (citation and quotations omitted).  With respect to the nature of Ranger Mitra's contact, during his deposition, Plaintiff described it as follows:

> Q.  Is the only physical contact that Jose Mitra had with you on April 10th, 2010, just tapping you on the shoulder to get your attention?
>
> A.  Yes, yes, yes, yes.
>
> Q.  So on April 10th, 2010, did Ranger Mitra hit you?
>
> A.  No, he didn't hit me physically.  He just tapped my shoulder, like to – then I stopped and looked behind, because he tapped my shoulder from behind.

Otyang Depo. at 93:17-24.  However, in his Declaration in support of his Opposition, Plaintiff now states that, "Park Ranger Jose Mitra approached me from behind and touched me forcefully on my shoulder when he could have simply approached me from the front."  Otyang Decl. at ¶ 7.  Defendant argues that Plaintiff cannot now recast the incident in an attempt to create an issue of fact to defeat summary judgment and urges the Court to disregard Plaintiff's revised characterization of the touching.  Reply at 5.  The Ninth Circuit has consistently recognized that a party cannot avoid summary judgment by creating "an issue of fact by an affidavit contradicting [its] prior deposition testimony."  *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).  In such circumstances, the Court may strike contradictory, sham affidavits intended to defeat summary judgment.  *Id*.  "This is because ... if a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."  *Van Asdale v. Int'l Game Tech*., 577 F.3d 989, 998 (9th Cir. 2009). (citations and quotation marks omitted).  For the sham affidavit rule to apply, "the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous."  *Id*. at 998-99.  Because the Court may not make credibility determinations or weigh conflicting evidence on summary judgment, the Court must be cautious when applying the rule.  *Id*. at 998.

Comparing Plaintiff's deposition testimony with the statement in his Declaration, the Court finds that Plaintiff is attempting to recharacterize Ranger Mitra's contact with him.  Whereas Plaintiff testified during his deposition that Ranger Mitra simply tapped him on the shoulder, causing Plaintiff to stop and look behind him, Plaintiff's statement in his Declaration depicts Ranger Mitra's contact as a forceful touching.  If Plaintiff believed that Ranger Mitra's contact with him was more than a tap on the shoulder, Plaintiff had the opportunity to describe it as such during his deposition.  Instead, during his deposition, Plaintiff affirmed that Ranger Mitra just tapped him on the shoulder and did not physically hit him.  Plaintiff's statement in his Declaration thus is not an elaboration or clarification of his prior testimony, but a new version of the interaction.  The Court finds that the inconsistency between Plaintiff's testimony and his Declaration statement is clear and unambiguous.  Accordingly,

1   the Court strikes Plaintiff's statement in ¶ 8 of his Declaration regarding Ranger Mitra's contact.

2   Based on the undisputed facts, the Court finds that Plaintiff has failed to establish a claim for battery. A reasonable jury could not return a verdict that Ranger Mitra's tapping Plaintiff on the shoulder was harmful or offensive contact. Moreover, Plaintiff has failed to set forth facts demonstrating that he was harmed or damaged by the contact. Plaintiff states in his Declaration that after Ranger Mitra approached him and issued him a citation, he felt "fearful and was embarrassed, indignant, and humiliated, especially among the many onlookers and felt I had no other choice than to leave." Otyang Decl. ¶ 8. Plaintiff's testimony fails to connect such harm to Ranger Mitra's physical contact with him; rather, his feelings stem from his interaction with Ranger Mitra generally and his enforcement of the Park Code. Accordingly, the Court **GRANTS** summary judgment in favor of Defendant on Plaintiff's battery claim.

   2.   Negligence

Plaintiff's third claim is for negligence. FAC at 6. "Under California law, the elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)." *Corales v. Bennett,* 567 F.3d 554, 572 (9th Cir. 2009) (internal quotations and citation omitted). "The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion . . . . Whether this essential prerequisite to a negligence cause of action has been satisfied in a particular case is a question of law." *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1196-97 (9th Cir. 2001) (quoting *Adelman v. Associated Int'l Ins. Co*., 90 Cal. App. 4th 352, 360 (2001)). Here, Defendant contends that it is entitled to summary judgment because there is no evidence that Ranger Mitra breached any duty to Plaintiff. Rather, it argues that the evidence demonstrates that Ranger Mitra carried out his duty to enforce the City's Parks Code. Plaintiff maintains that Ranger Mitra "owed a duty of care to a member of the public such as Plaintiff, so as not to cause them injury and wrongfully evict them from premises where they are

1  undertaking protected activity." Opp. at 9.  However, as discussed above, Ranger Mitra was
2  enforcing Parks Code § 7.03(t), which Plaintiff violated by not obtaining a permit to set up his table
3  in the Civic Center Plaza.  Plaintiff has not demonstrated how such action amounts to an unlawful
4  eviction or a breach of a duty owed to Plaintiff.  The Court therefore **GRANTS** summary judgment in
5  favor of Defendant on this claim.

       3.      <u>Intentional Infliction of Emotional Distress</u>

7        Plaintiff's fourth claim is for intentional infliction of emotional distress (IIED).  FAC at 6-7.
8  "A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and
9  outrageous conduct by the defendant with the intention of causing, or reckless disregard of the
10 probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional
11 distress; and (3) actual and proximate causation of the emotional distress by the defendant's
12 outrageous conduct."  *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (quoting *Potter v. Firestone*
13 *Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993)).  "A defendant's conduct is 'outrageous' [only]
14 when it is so 'extreme as to exceed all bounds of that [which is] usually tolerated in a civilized
15 community.'"  *Id.* at 1050–51 (quoting *Potter*, 6 Cal. 4th at 1001).  "Severe emotional distress means
16 emotional distress of such substantial . . . or enduring quality that no reasonable [person] in civilized
17 society should be expected to endure it."  *Id.* at 1051 (quoting *Potter*, 6 Cal. 4th at 1004).

18       Defendant argues that it is entitled to summary judgment on this claim because there is no
19 evidence that Ranger Mitra's conduct was "extreme and outrageous," or that it was done with the
20 intention of causing Plaintiff emotional distress.  Mot. at 10.  Defendant further argues that Plaintiff's
21 claim fails because it is undisputed that he has not suffered the type of "severe or extreme" emotional
22 distress that creates liability.  *Id*.  In support, Defendant points out that when asked to describe all of
23 the emotional distress that he experienced as a result of the April 10, 2010 incident with Ranger
24 Mitra, Plaintiff testified that he felt "belittled" and "offended."  Otyang Depo. at 172:10-21.

25       In his Opposition, Plaintiff responds that: "Anyone who has been stopped and accosted by an
26 Officer has felt the immediate dread and spotlight of suspicion on them.  This was not the first time
27 Ranger Mitra had confronted Plaintiff and made physical contact with him, and thus a trier of fact can
28

11

reasonably find it outrageous conduct." Opp. at 9. Plaintiff further asserts that, as a result of his interaction with Ranger Mitra, he "felt fear, embarrassment, indignation, and humiliation, especially with the many onlookers and felt he had no other choice than to leave the premises." *Id*.

The Court agrees with Defendant that Plaintiff has failed to come forward with evidence to support essential elements of his claim. Plaintiff has not pointed to facts suggesting that Ranger Mitra's tap on the shoulder or his enforcement of the Parks Code amounted to conduct that was so extreme as to exceed all bounds of that usually tolerated in a civilized community. Nor has Plaintiff identified facts from which a reasonable jury could find that Ranger Mitra's actions were intended to cause or were done with reckless disregard for causing Plaintiff emotional distress. Finally, Plaintiff's assertions that he suffered fear, embarrassment, indignation, and humiliation as a result of his interaction with Ranger Mitra do not rise to "emotional distress of such substantial quality or enduring quality that no reasonable person in a civilized society should be expected to endure it." *Potter*, 6 Cal. 4th at 1001. Accordingly, the Court **GRANTS** summary judgment in favor of Defendant on Plaintiff's IIED claim.

4. Negligent Infliction of Emotional Distress

Plaintiff's fifth claim is for negligent infliction of emotional distress. FAC at 7-8. Defendant moves for summary judgment on this claim, arguing that because Plaintiff's negligence claim fails, his negligent infliction of emotional distress claim also fails.

"Negligent infliction of emotional distress is not an independent tort; it is the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply." *Ess v. Eskaton Properties, Inc.*, 97 Cal. App. 4th 120, 126 (2002). "[T]here is no duty to avoid negligently causing emotional distress to another...." *Potter*, 6 Cal. 4th at 984. Thus, "unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty...." *Id.* at 985.

As discussed above, Plaintiff has failed to come forward with evidence demonstrating that Ranger Mitra breached any duty owed to him. Because Plaintiff's negligence claim fails, his

negligent infliction of emotional distress claim fails as well.  The Court therefore **GRANTS** summary judgment on this claim in favor of Defendant.

### IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** summary judgment in favor of Defendant on each of Plaintiff's claims.

**IT IS SO ORDERED.**

Dated: March 6, 2013

_____
Maria-Elena James
United States Magistrate Judge